UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **FRANCIS B. "BUDDY" ALLEMANG** | **CIVIL ACTION NO. 2:19-CV-128** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE OF LOUISIANA THROUGH THE DEPARTMENT OF PUBLIC SAFETY (LOUISIANA OFFICE OF STATE POLICE, TROOP D), ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is a "Memorandum in Support of DPSC & Trooper Rogers' Rule 12 Response/Motion to the Plaintiff's Second Supplemental Petition for Damages" (Rec. 23-1) which pursuant to a joint motion,[1] was converted to a Motion for Summary Judgment (Rec. 35) wherein Defendants, the Louisiana Department of Public Safety & Corrections (Office of State Police) ("DPSC") and Freddy Trooper Rogers, (collectively referred to as "Defendants") move to have Plaintiff's claims of defamation dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant, Louisiana State Police ("LSP") Trooper Rogers, also seeks to be dismissed from this lawsuit relying on his entitlement to qualified immunity. [2]

---

[1] Rec. 33.
[2] Pursuant to a Joint Motion (Rec. 33), the parties requested that the Court defer disposition of the remaining issues raised within Defendants' Rule 12(b)(6) which included a motion to dismiss Plaintiff's defamation claim. However, because Plaintiff concedes that the defamation claim should be dismissed, the Court will dismiss the claim herein instead of deferring it to a later date. Defendants may re-urge any remaining issues (motion to strike and/or attorney's fees) in Defendants' pending Rule 12 motion (Rec. 23.).

## **FACTUAL STATEMENT**

On August 21, 2015, the DPSC conducted a DWI Checkpoint on Hwy 27. Plaintiff, Francis, G. "Buddy" Allemang was driving on Hwy 27 along with other guest passengers. After being stopped at the checkpoint, Plaintiff advised the Trooper Freddy Trooper Rogers that he had consumed four (4) beers prior to arriving the Checkpoint. Trooper Rogers advised Plaintiff that he would administer a Standard Field Sobriety Test ("SFST") to which Plaintiff responded that he would not be able to perform the movement tests of the field sobriety test because he has previously undergone back surgery and had permanent nerve damage in his legs. Plaintiff also informed Trooper Rogers that he was taking medications for diabetes and high blood pressure as well as over-the-counter Aleve for his leg and back issues.[3]

Trooper Rogers administered the test and concluded that there was probable cause to arrest Plaintiff because he (1) had lack of smooth pursuit in both eyes during the "horizontal gaze nystagmus" test; (2) stopped once while walking during the "walk and turn" test; (3) missed heel-toe contact a total of five times during the "walk and turn" test; (4) stepped off the line once during the "walk and turn" test; (5) raised his arms once during the "walk and turn" test; (6) placed his right foot down after three (3) seconds during the "one leg stand" test; (7) place his left food down after six (6) seconds during the "one leg stand" test; (8) swayed while balancing on both legs during the "one leg stand" test; (9)

---

[3] Defendants' exhibit D, p. 164:4-164:12, 165:24-166:9.

used his arms to balance on both legs during the "one leg stand" test; and (10) put his foot down on each leg during the "one leg stand" test. Trooper Rogers relied on Plaintiff's performance on the "walk and turn" and "one leg stand" to find probable cause to detain Plaintiff.

Plaintiff alleges that Trooper Rogers intentionally allowed condensation to form on the windshield to prevent the test from being videoed, and also deactivated his voice recorder so there would be no record of the conversation. Trooper Rogers states that he did not know his voice recorder was not activated. Trooper Rogers' voice recorder and video functioned properly in the five (5) DWI arrests Trooper Rogers made both prior to and after Plaintiff's arrest.[4] There were no repairs made to the dash camera-microphone system in Trooper Rogers' unit during the six (6) months prior and after Plaintiff's arrest.[5]

Trooper Rogers took Plaintiff to the on-site mobile command center to conduct a standard breath test. The results of the breath test were 0.0000%. Plaintiff consented to providing a urine sample test and was transported to the DPSC station. Plaintiff's urine drug test was negative. After providing the urine sample, Plaintiff was transported to the Calcasieu Parish Sheriff's Office Jail for processing. He was then released on his own recognizance. The Calcasieu Parish District Attorney rejected Plaintiff's DWI charge on February 1, 2016.

Plaintiff complains that his transport to jail deprived him of liberty without due process of law in violation of his 14th Amendment rights. Plaintiff also complains, that

---

[4] Plaintiff's exhibits C, D *in globo*.
[5] Plaintiff's exhibit E, p. 4.

despite the normal breath test and drug screen, the DPSC still presented the DWI charge to the Calcasieu Parish District Attorney. The District Attorney rejected the case, but the arrest has not been expunged.

Plaintiff accuses Trooper Rogers of falsifying his arrest report and false arrest. Plaintiff seeks damages, past, present and future, and punitive damages for invasion of privacy, defamation, humiliation, intentional and/or negligent infliction of emotional and physical stress, loss of reputation, lost wages/income, loss of earning capacity, costs involved in securing rejection of the charges and expungement of the arrest, medical expenses, and legal expenses.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the

nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

Defendants move for dismissal of Plaintiff's (1) § 1983 claims against Trooper Rogers in his individual capacity under the theory of qualified immunity, (2) defamation claims against the State of Louisiana and (3) claims of vicarious liability under 42 U.S.C. § 1983 against the State of Louisiana. Plaintiff does not oppose the dismissal of his defamation claim, nor does he oppose dismissal of the vicarious liability claim under 42 U.S.C. § 1983. Accordingly, these claims will be dismissed with prejudice.

*Qualified Immunity*

The issue before the Court is whether Trooper Rogers is entitled to qualified immunity and therefore shielded from suit in his individual capacity. Individual or personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *Monell v. New York City Dept. of Social Svcs.*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 (1978). Plaintiff has sued Trooper Rogers and seeks to impose personal liability on him for his actions as an LSP Trooper.

To prevail against Trooper Rogers in a personal-capacity suit, Plaintiff must show that Trooper Rogers caused the deprivation of a federal right under the color of state law. *Id.* However, qualified immunity shields Trooper Rogers from liability while performing discretionary functions, as long as his actions reasonably could have been thought consistent with the rights they are alleged to have violated. See *Copsey v. Swearingen,* 762 F.Supp. 1250, 1257 (M.D. La. 1991) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987)). If no constitutional right was violated, there is no necessity for further inquiries concerning qualified immunity. If, on the other hand, there is proof of a constitutional violation, the next inquiry is whether Trooper Rogers' conduct was objectively reasonable under the clearly established law existing at the time of Plaintiff's arrest. See *Copsey,* 762 F.Supp. at 1257.

When a warrantless arrest is the subject of an action brought under § 1983, the defendant is entitled to qualified immunity if probable cause existed to arrest the plaintiff. See *Atwater v. Lago Vista,* 532 U.S. 318, 322, 121 S.Ct. 1536 (2001).("[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal

offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

To avoid summary judgment on a claim of qualified immunity, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the defendant acted in an objectively reasonable manner in view of the existing law and facts available to them." *Lampkin v. City of Nacogdoches,* 7 F.3d 430, 435 (5th Cir. 1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1400 (1994). To do so, the Court must conduct a bifurcated analysis. See, e.g. *Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004). "First, [the court] asks[s] whether, considered in the light most favorable to the plaintiff, the plaintiff has alleged facts that, if proven, would establish that the official violated the plaintiff's constitutional rights." *Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, 238 (5th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)). Second, a court must address whether the defendant's "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537. "To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citations omitted). Although qualified immunity is an affirmative defense, "plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery,* 569 F.3d 214, 217 (5th Cir. 2009).

Trooper Rogers testified that the reason he arrested Plaintiff was because Plaintiff had informed him that he had consumed four (4) beers prior to reaching the DWI checkpoint and because Plaintiff had performed poorly on the SFST. Trooper Rogers also testified that he detected a faint to moderate odor of alcohol on Plaintiff's breath, his eyes were red and bloodshot, and he had an unsteady gait and unsure balance. Trooper Rogers also noted that Plaintiff had informed him that he had taken medications. Even though Plaintiff's Breathalyzer test came back negative, Trooper Rogers felt that Plaintiff should also be tested for drugs.

Plaintiff argues that Trooper Rogers' arrest was a violation of his constitutional rights. Plaintiff notes that there is no evidence that he was speeding or exhibiting any driving behavior to indicate that he was driving under the influence.[6] Plaintiff informed Trooper that he had consumed four (4) beers since noon that day; his last beer was consumed with his evening meal around 9:30 p.m.[7]

When asked by Trooper Rogers is there was any reason why he could not perform the SFST, Plaintiff responded "yes" and explained that he had underwent back surgery and had nerve damage in both legs.[8] When asked if there was any reason why Plaintiff could not pass a test involving his eyes, Plaintiff informed Trooper Rogers that he had a "lazy eye".[9]

---

[6] Defendants' exhibits C, and D.
[7] Defendants' exhibit D, 119:25-120:18, 122:4-122:8.
[8] Defendants' exhibit D, 178:25-128:7, 133:1-133:8, 153:1-154:5; Exhibit A.
[9] Plaintiff's exhibit A, depo. of Donna Sprouse.

Dr. Carl Nabours, M.D. treated Plaintiff for several years including during 2015; Dr. Nabours confirmed that Plaintiff's nerve damage and radiculopathy in his legs, eye condition, diabetes and high blood pressure would have caused him to fail any portion of a SFST that required coordination, balance and /or normalcy of vision.[10]

Plaintiff notes that Trooper Rogers' camera footage was entirely unintelligible due to condensation that had formed on his windshield, and his voice recorder was turned off.[11] Trooper Rogers' testified that he had no idea why the voice recorder was not working.[12]

Plaintiff submits evidence that Trooper Rogers' voice recorder functioned properly in the five (5) DWI arrests Trooper Rogers made both prior to and after Plaintiff's arrest, with the exception of those arrests involving injury to the driver due to a resulting automobile accident, which prevents the driver from undergoing a SFST.[13] Plaintiff also submits evidence that there was not a single repair made to the dash camera-microphone system in Trooper Rogers' unit during the six (6) months preceding or following Plaintiff's arrest.[14] Plaintiff reminds the Court that it is an undisputed fact that Plaintiff informed Trooper Rogers of his medical conditions pre-arrest.

Trooper Rogers found probable cause and arrested Plaintiff based on the walk-and-turn and one-leg stand tests. Plaintiff was then escorted to the Intoxilyzer trailer where he consented to a Breathalyzer;[15] the numbers reported all zeroes (.000%).[16] Trooper Rogers

---

[10] Plaintiff's exhibit B, *in globo*.
[11] Defendants' exhibit D, 147:25-149:7; Defendants' exhibit C, p. 98:21-99:14.
[12] Defendant' exhibit C, p. 98:21-99:14.
[13] Plaintiff's exhibit C *in globo*.
[14] Plaintiff's exhibit D, p. 4.
[15] Defendants' exhibit D, p. 157:25-158:18; Defendants' exhibit C, p. 72:6-72:13 Defendant's exhibit D, p. 158:20-160:15.
[16] Defendants' exhibit D, p. 162:11-163:1; Defendant Exhibit C, 51:19-51:24.

then inquired about the medications Plaintiff had taken and was informed that he had taken medicine for diabetes and high blood pressure.[17] Plaintiff argues that despite the fact that the Breathalyzer reported 0.000% alcohol, and he had informed Trooper Rogers of medical reasons why he could not adequately perform the SFST, Trooper Rogers transported Plaintiff to Troop D headquarters for a urine sample for testing.[18] Plaintiff provided the urine sample which also reported negative results.[19]

Probable cause "exists when 'the facts and circumstances within the officer's knowledge. . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Bosarge v. Mississippi Bureau of Narcotics,* 796 F.3d 435, 442 (5th Cir. 2015). Plaintiff argues that the probable cause dissipated:

> If probable cause is established at any early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity. A person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated. "as a corollary . . . of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause."

*United States v. Ortiz,* 427 F.3d 567, 574 (9th Cir. 20040 (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988)).

Trooper Rogers is entitled to qualified immunity if probable cause existed to believe that Plaintiff was committing a criminal offense. *Wilder v. Turner,* 490 F.3d 810, 813 (10th

---

[17] Defendants' exhibit D, p. 164:8-164:12, 165:24-166:9.
[18] Id., p. 163:7-13:13, 167:2-167:4.
[19] Id., p. 169:14-169:20; Defendant's exhibit C, p. 174:17-174:18.

10

Cir. 2007). In *Holton v. Mohon,* 684 F.Supp. 1407 (N.D. Texas 1987) (citing *United States v. Garcia,* 179 F.3d 265, 269 (5th Cir. 1999); and *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, (5th Cir. 2004)), the court recognized that the officer need only know with "fair probability" that the suspect committed the offense, "which requires more than a 'bare suspicion' but less than a preponderance of the evidence." In other words, based on Trooper Rogers' knowledge at the time of the incident, did he have a fair probability to believe that Plaintiff was intoxicated to the degree of potentially endangering himself or others?

Trooper Rogers testified that he relied on Plaintiff's performance on the "walk-an-turn" and "one-leg stand" test to determine probable cause. As previously noted, prior to conducting the tests, Plaintiff informed Trooper Rogers why he would not be physically able to adequately perform the tests.[20] One of Plaintiff's guest passengers confirms through her deposition testimony that Plaintiff informed Trooper Rogers of his physical infirmities.[21] Plaintiff admitted to Trooper Rogers that he had consumed four (4) beers, the first beer, around noon, and the last beer with his evening meal, around 9:30 p.m. Trooper Rogers affirms when he interviewed Plaintiff, he claimed to have a "bad back, pinched nerve and bad hip."[22]

Plaintiff also submits the deposition testimony of one of the guest passengers in his vehicle who overheard Trooper Rogers ask Plaintiff whether there was any reason why Plaintiff could not pass a test involving his eyes, in which he responded he had a lazy eye.

---

[20] Defendants' exhibit D, p. 178:25-128:7, 133:1-133:8, 153:1-154:5; exhibit C.
[21] Plaintiff's exhibit A.
[22] Defendants' exhibit C, Trooper Rogers depo. p. 73:6-17.

11

Plaintiff asserts that Trooper Rogers was aware of his physical and medical conditions and the likelihood that they would affect his performance on the SFST before he used Plaintiff's performance to effectuate his arrest.

Trooper Rogers argues that based on the following, he had an objectively reasonable basis to arrest Plaintiff:

- Plaintiff's admitted alcohol consumption;

- Trooper Rogers' conclusion that Plaintiff failed the SFST;

- Trooper Rogers' detection of an alcohol odor on Plaintiff's breath;

- Trooper Rogers' observation that Plaintiff's eyes were red and bloodshot;

- Trooper Rogers' perception that Plaintiff had an unsteady gait and unsure balance;

- Plaintiff's admission that he had taken medication and Trooper Rogers' belief that Plaintiff may have been impaired thereby;

- Trooper Rogers' previous experience with an arrestee who had a breath test result of .000% but appeared impaired and later tested positive for drugs.

Based on the evidence presented, the Court agrees that Trooper Rogers had probable cause to arrest Plaintiff. Even if probable cause was lacking, law enforcement officers who "reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). Thus, the Court finds that Trooper Rogers' conduct was objectionably reasonable; Plaintiff has failed to show that Trooper Rogers knowingly violated Plaintiff's rights.

## **CONCLUSION**

For the reasons set forth above, the Court will grant Defendants' motion for partial summary judgment and dismiss with prejudice Plaintiff's claims of defamation, vicarious liability and claims against Trooper Rogers in his individual capacity.

**THUS DONE AND SIGNED** in chambers, on this 7th day of May, 2020.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**