## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

FRANCIS G ALLEMANG                    CASE NO.  2:19-CV-00128

VERSUS                                JUDGE JAMES D. CAIN, JR.

STATE OF LOUISIANA ET AL              MAGISTRATE JUDGE KAY

### MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Doc. 52) filed by Defendants, the Louisiana Department of Public Safety & Corrections (Office of State Police)("DPSC") and Freddie Rogers. In its motion, Defendants move to dismiss Plaintiff's remaining federal and state law claims.

### PROCEDURAL HISTORY

The instant civil rights Complaint was removed to this Court on February 1, 2019.[1] After the Court denied a motion to remand,[2] the State of Louisiana and Freddie Rogers filed a Motion for Summary Judgment/ Motion to Dismiss which was incorporated into their Answer to Plaintiff's Second Supplemental Petition for Damages.[3] The Motion for Summary Judgment sought to (1) dismiss Plaintiff's defamation causes of action for failure to allege the requisite elements, (2) grant qualified immunity to Defendant Rogers, and (3) strike paragraphs 14 and 15 of Plaintiff's Second Supplemental Petition for Damages. Before the Court ruled on the motion, Defendants filed a Supplemental Motion for

---

[1] Doc. 1.
[2] Docs. 18 and 20.
[3] Doc. 23.

Summary Judgment[4] seeking to dismiss Plaintiff's claim for defamation, Fourth Amendment (unlawful arrest) and Fourteenth Amendment violations/deprivation and for Section 1983 vicarious liability; Defendants also sought an award of attorney's fees under 42 U.S.C. § 1988.

The Court issued a Memorandum Ruling and Judgment which found that Rogers is entitled to qualified immunity in his individual capacity; the Court also dismissed Plaintiff's claims of defamation, and vicarious liability.[5]

In addition to filing a Notice of Appeal,[6] Plaintiff filed a Motion to Amend Judgment and to Stay Proceedings Pending Appeal[7] in which Plaintiff requested that the Court certify the Judgment as final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Defendants opposed that motion and after briefing, the Court denied Plaintiff's motion.[8] Before the Court ruled on Plaintiff's Motion to Amend/Correct Judgment, Defendants filed another Motion for Summary Judgment[9] which is now before the Court. Shortly thereafter, Plaintiff filed a Motion to Defer Consideration of Defendants' Second Motion for Summary Judgment[10] in order to depose several Louisiana State Police Troopers that could potentially support Plaintiff's allegations. The Court granted Plaintiff's motion and extended Plaintiff's response deadlines to January 25, 2021.

---

[4] Doc. 35.
[5] Docs. 46 and 47.
[6] Doc. 48.
[7] Doc. 50.
[8] Doc. 62.
[9] Doc. 52.
[10] Doc. 55.

The Fifth Circuit dismissed Plaintiff's appeal for want of jurisdiction.[11]  In response to Plaintiff's Motion for Relief from Judgment and Plaintiff's Opposition to Motion for Summary Judgment, Defendants filed a Motion to Exclude and/or Strike[12] five (5) affidavits. The declarations of Michael C. Edgar, Sr. and Clayton Reavis are being relied upon to support Plaintiff's Motion for Relief from Judgment[13] and Plaintiff's Opposition to  Defendants' Motion for Summary Judgment.[14] The Declarations of Donna Sprouse,[15] Carl Nabours, M.D.,[16] and Wayne "Steve" Thompson[17]are being relied upon to support Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

The Court has ruled that the declarations of Michael C. Edgar, Sr. and Clay Reavis are inadmissible.[18] As such, they will not be considered herein.

## FACTUAL STATEMENT

Between August 21, 2015 and August 22, 2015, while the Louisiana State Police ("LSP") and Calcasieu Parish Sheriff's Office ("CPSO") were conducting a DWI and seatbelt checkpoint, Plaintiff Francis G. "Buddy" Allemang was driving on the road in which the checkpoint was being conducted.  He was stopped at approximately 10:30 or 11:00 p.m. Mr. Allemang asserts that he informed the greeting officer at the checkpoint that he had consumed four (4) beers since noon and that the last beer he consumed was around 9:30 p.m.

---

[11] Doc. 68.
[12] Doc. 82.
[13]  Doc. 69.
[14] Doc. 70.
[15] Doc. 70-12, Plaintiff's exhibit J.
[16] Doc. 70-14 Plaintiff's exhibit L.
[17] Doc. 70-4, Plaintiff's exhibit C,
[18] Doc. 92.

The greeting officer escorted Mr. Allemang to LSP Trooper Rogers so that Trooper Rogers could conduct a Standard Field Sobriety Test ("SFST"). When asked by Trooper Rogers if there was any reason why he would not be able to perform the SFST, Mr. Allemang informed Trooper Rogers that he had nerve damage in both legs due to a back surgery. Mr. Allemang asserts that he also informed Trooper Rogers that he had a "lazy eye." The recorded result of the SFST are as follows:

    a.  Had lack of smooth pursuit in both eyes during the "horizontal gaze nystagmus" test,
    b.  Stopped once while walking during the "walk and turn" test,
    c.  Missed heel-toe contact a total of five times during the "walk and turn" test,
    d.  Stepped off the line once during the "walk and turn test",
    e.  Raised his arms once during the "walk and turn" test,
    f.  Placed his right foot down after three (3) seconds during the "one leg stand" test,
    g.  Placed his left foot down after six (6) seconds during the "one leg stand" test,
    h.  Swayed while balancing on both legs during the "one leg stand" test,
    i.  Used his arms to balance on both

Trooper Rogers noted a "faint smell of alcohol on Mr. Allemang's breath and reported that his breath smelled "somewhat mediciney," which he explained to mean the "smell of mouthwash or gum," which Trooper Rogers indicated was used to hide the smell of alcohol.[19]  Trooper Rogers' "Certification of Arrest" Report indicated that upon coming into contact with Plaintiff, he observed and/or detected "red blood shot eyes, unsteady gait, [and] a faint to moderate odor of alcoholic beverage on breath." [20] In addition, Mr. Allemang admitted to consuming approximately four (4) beers. While Mr. Allemang

---

[19] Plaintiff's exhibit B, p. 43-45.
[20] Doc. 35-3.

claims he told a Trooper, whose name he does not recall, that he had four (4) beers since noon, Trooper Rogers' narrative Louisiana Uniform DWI Arrest Report states that Mr. Allemang reported to him that he had consumed 4 beers between the hours of 6:30 p.m. and 9:30 p.m. on the night of the Checkpoint.

Trooper Rogers testified that after completing the SFST, he believed Mr. Allemang to be impaired.[21] Even though Mr. Allemang blew a 0.0% on the Intoxilyzer, based on Mr. Allemang's performance on the SFST, Trooper Rogers suspected that he was impaired due to drugs.[22] Trooper Rogers relied on Mr. Allemang's performance on the "walk and run" and "one leg stand" tests in finding probable cause.[23] Trooper Rogers testified that had he known of Mr. Allemang's medical condition concerning his back and/or nerve issues, "that would carry a great weight" as to whether or not he would have had probable cause to arrest Mr. Allemang.[24]

Trooper Rogers asked Mr. Allemang if he had taken any medications. Mr. Allemang responded that he had taken medication for back and hip pain, and diabetes and high blood pressure as well as Aleve for back and leg issues.[25]  Trooper Rogers then asked Mr. Allemang to provide a urine sample for testing by the LSP crime laboratory to which Mr. Allemang consented. After collecting the sample, Trooper Rogers transported Mr. Allemang to the Calcasieu Parish jail for booking and entry into the AFIS system. Mr. Allemang was released after being processed. The results of Mr. Allemang's urine drug

---

[21] Id. p. 40:12-15.
[22] Id. p.  51.
[23] Plaintiff's Exhibit l, P. 119:7-10.
[24] Plaintiff's Exhibit B, p. 66.
[25] Plaintiff's exhibit A, pp. 164-166.

test wase negative, but not all controlled and non-controlled dangerous substances were checked and/or screened.[26] The Calcasieu Parish District Attorney rejected Plaintiff's DWI charge on February 1, 2016.

### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

---

[26] Doc. 35-4; Doc.1-5 ¶ 11.

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Mr. Allemang's remaining state law claims against DPSC and/or Rogers are: (1) intentional infliction of emotional distress ("IIED"); (2) negligent infliction of emotional distress ("NIED"); (3) tort-based false arrest; (4) Louisiana due process and/or privacy deprivations resulting from false arrest; (5) improper/negligent training; and vicarious liability for state law torts.  Mr. Allemang's remaining federal claims are negligent training and the existence of a practice or custom (i.e. official capacity claims) of making false and/or improper DWI arrests during traffic stops.

*Intentional infliction of emotional distress and negligent infliction of emotional distress*

Defendants move to dismiss Mr. Allemang's claims of IIED and NIED. To recover, Mr. Allemang must establish that: (1) the conduct of the defendant was extreme and outrageous;  (2) the emotional distress suffered was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *Hoffpauir v. Columbia Cas. Co.,* 2013

WL 5934699, at *5 (M.D. La. 11/5/2013)  (citing *White v. Monsanto Co.*, 585 S.2d 1205, 1209 (La. 1991).

Defendants maintain that all of the elements are lacking for Mr. Allemang's IIED and NIED claims.  Specifically, the arrest was neither extreme nor outrageous considering this Court's determination that it was supported by probable cause.  In addition, Mr. Allemang testified that he has not received counseling services for treatment, does not take medication for, nor has he seen any healthcare professionals related to these claims. Furthermore, Mr. Allemang has no evidence of Trooper Rogers' subjective state of mind at the time of the arrest, nor has Mr. Allemang submitted evidence that Trooper Rogers desired to inflict great emotional harm on Mr. Allemang.

Mr. Allemang has not responded to Defendants' arguments.  The Court agrees with Defendants that the necessary elements of Mr. Allemang's claims are lacking and finds that the IIED and NIED claims should be dismissed.

*False arrest tort claim*

The tort of false arrest is comprised of two elements: (1) a detention; and (2) the unlawfulness of the detention. *Martin v. Neustrom,* 967 So.2d 550, 552 (La. App. 3 Cir. 10/03/2007). To recover, Mr. Allemang must prove that he was unlawfully detained.  *Id.* Because the Court found that Trooper Rogers had probable cause to arrest Mr. Allemang, this claim will be dismissed as well.

*False arrest due process and privacy deprivation claims*

Mr. Allemang alleges he suffered a deprivation of his right to due process and privacy under the Louisiana Constitution as a result of his arrest. A qualified immunity

defense to a claim under Louisiana constitutional law is analyzed under the same standard used for a qualified immunity defense to a claim under federal constitutional law. *Moresi v. La. Dept. of Wildlife and Fisheries,* 567 So.2d 1081, 1093 (La. 1990). ("The same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983 require us to recognize a similar immunity for them under any action arising from the state constitution.").

Accordingly, because this Court concluded that Mr. Rogers was entitled to qualified immunity, Mr. Allemang's claims for a violation of any state constitutional rights will be dismissed.

*§ 1983 Official capacity claim*

A governmental entity may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. See *Monell v. Dep't of Soc. Servs.,*436 U.S. 658, 694, 98 S.Ct. 2018 (1978). Thus to prevail on a § 1983 claim, a plaintiff must show: "1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred [by a person acting under the color of state law]; and 4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children v. G.B. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996). An offending policy may be an official policy adopted and promulgated by the entity, or a "persistent, widespread practice of [entity] officials or employees" that is "so common and well settled as to constitute a custom that fairly represents [entity] policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Cozzo v. Tangipahoa Parish Council,* 279 F.3d 273 (5th Cir. 2002). The inadequate policy or

custom must have been adopted with deliberate indifference to the constitutional rights of its citizens.  *City of Canton v. Harris,* 489 U.S. 378, 381-91 109 S.Ct. 1197 (1989).

Mr. Allemang alleges that the DPSC, through its official policies, customs, and/or practices of Lt. Paul Brady and Cpt. Chris Guillory, is liable for the failure of Troopers to ascertain probable cause prior to the effectuation of a warrantless arrest because they sanctioned the custom, practice and/or policy known as the "Brady Days." "Brady Days," named after Lt. Brady himself as the individual who divined the scheme, is a phrase coined for the unwritten policy that gave Troopers time off for issuing DWI citations, which, in turn, encouraged the arrest of persons who were not actually impaired.

Specifically, Mr. Allemang alleges that Troopers were permitted to go home for the remainder of a shift, and receive the entire shift's pay, if they effectuated a DWI arrest on their 8-hour short day.[27]  As to Mr. Allemang's arrest, he alleges that his unlawful DWI arrest was prompted by Trooper Rogers' adherence to the "Brady days" policy.

To support his claims of the alleged illegal "Brady days" policy, Mr. Allemang submits the following summary judgment evidence:

- Memorandum from Internal Affairs Investigation[28]

- Defendants' Answers to Interrogatories[29]

The Internal Affairs Investigation concluded that misconduct as to the "Brady Days" was unfounded.  However, the investigation revealed that out of 57 Troopers interviewed,

---

[27] Plaintiff's exhibit G,; Plaintiff's exhibit K, p. 9.
[28] Plaintiff's exhibit G,
[29] Plaintiff's exhibit K.

several admitted to a policy that allowed the Trooper who made a DWI arrest, to make that arrest his final assignment on a short 8-hour day. All of the Troopers indicated that the alleged "Brady Days" policy occurred approximately four (4) years prior to their interview.

In addition, Mr. Allemang relies on Defendants' admission in its Interrogatory Responses that in the ten (10) years preceding Plaintiff's arrest, an officer in a supervisory capacity of Troop D provided incentive for officers to make DWI arrests.[30]

Mr. Allemang argues that Trooper D's policy to incentivize Troopers to effectuate DWI arrests, not because they had probable cause to do so, but because they stood to gain personal benefit, effectively encouraged Troopers to recklessly disregard a citizen's protected rights. Mr. Allemang maintains that he has submitted evidence of a policy, known and practiced by numerous Troopers, that reflects a deliberate indifference to citizens' right to be free from a warrantless arrest absent probable cause for the same.

Defendants remark that the alleged "Brady Days" existed and ended in 2011 or 2012. Mr. Allemang's arrest was in 2015.  Furthermore, at the time of Mr. Allemang's arrest, Lt. Brady was not Trooper Rogers' supervisor; his supervisor was Lt. Stephen Cyprien.[31] Defendants note that Mr. Allemang has submitted no summary judgment evidence that Trooper Rogers participated in "Brady Days."  Defendants further note that Mr. Allemang's arrest resulted from a DWI checkpoint rather than a traffic stop, and that Trooper Rogers completed his shift after the arrest.

---

[30] Plaintiff's exhibit K, Interrogatory. 2, p. 2.
[31] Doc. 35-3 (Exhibit A, *in globo* –DPSC and Rogers' November 14, 2017 Answers to Interrogatories and Responses to Requests for Production of Documents).

As such, Defendants argue that Mr. Allemang's suggestion that his DWI arrest was somehow prompted by the Brady Days' policy is entirely irrelevant as to this arrest.  The Court agrees with Defendant.  Mr. Allemang has provided no summary judgment evidence that is relevant to his arrest that would create a genuine issue of material fact for trial to determine whether or not the alleged "Brady Days" policy incentivized Trooper Rogers to deprive Mr. Allemang of any constitutional rights.

*Negligent and/or inadequate training*

Mr. Allemang argues that the DPSC is liable for inadequate training of their officers as to the proper administration of SFSTs. A failure to train claim can give rise to § 1983 liability. *Brown v. Bryan Co.,* 219 F.3d 450, 457 (5th Cir. 2000), *cert. denied,* 562 U.S. 827, 131 S.Ct. 66 (2010)). A "custom" rising to the level of official policy may, in appropriate cases, encompass allegations that a policymaker failed to act affirmatively, including a failure to adequately train a subordinate. *Connick v. Thompson,* 563 U.S. 51, 131 S.Ct. 1350, 1359 (2011). "The failure to train can amount to a policy of deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson v. City of Fort Worth,*588 F.3d 838, 849 (5th Cir. 2009) (citing *Brown,* 219 F.3d at 458). The "focus must be on the adequacy of the training program in relation to the tasks the particular officer(s) must perform.  *Snyder,* 142 F.3d at 798 (quoting *City of Canton,* 489 U.S. at 390-91).

To state a claim under § 1983 for failure to properly train and supervise, Mr. Allemang must prove that he was deprived of a constitutional right as a direct and proximate result of an official policy or custom attributable to the entity. *Pineda v. City of*

*Houston,* 291 F.3d 325, 332 (5th Cir. 2002). Mr. Allemang must also prove that the constitutional violation was a highly predictable consequence of such a failure or failures. *Bd. of Cnty. Comm'r s v. Brown,* 520 U.S. 397, 409, 117 S.Ct. 1382 (1997). Finally, Mr. Allemang Must prove that the entity's "failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick,* 131 S.Ct. at 1360 (quoting *Canton*, 489 U.S. at 395).

Where the need to train employees is "so obvious: that failure to do so can properly be characterized as 'deliberate indifference' to constitutional rights." *Canton,* 489 U.S. at 390 n. 10.

Defendants move to dismiss Mr. Allemang's claims of negligent training under federal and state law. To prevail on a federal failure to train claim, Mr. Allemang must prove that:

(1) A supervisor either failed to supervise or train the subordinate official;
(2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and
(3) the failure to train or supervise amounts to deliberate indifference.

*Goodman v. Harris County,* 571 F.3d 388, 395 (5th Cir. 2009) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)). Mr. Allemang must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Goodman,* 571 F.3d at 395 (citing *Cousin v. Small,* 325 F.3d 287, 293 (5th Cir. 2005)). He must also "allege with specificity how a particular training program is defective," and "the focus must be on the adequacy of the training program in

relation to the tasks the particular officers must perform." *Goodman,* 571 F.3d at 395 (citing

*Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005)).Where a plaintiff fails to

make the requisite showing of deliberate indifference, the court need not address the other

two prongs of supervisor liability for inadequate training. *Goodman*, 571 F.3d 395 (citing

*Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 382 (5th Cir.

2005)).

Plaintiffs submit the Declaration of Wayne Steve Thompson, PhD. who declared

that an SFST is exceptionally technical in nature.[32]  Mr. Allemang argues that errors can

lead to arrest without probable cause and thus, violate a person's constitutional rights. Mr.

Allemang asserts that there were errors in Trooper Rogers' arrest report and suggests that

Trooper Rogers' lack of training and refresher training had a direct effect on his ability to

properly administer an SFST, and in turn, to ascertain probable cause results.[33]

Mr. Allemang submits as summary judgment evidence, a "letter" from Wayne Steve

Thompson, PhD, who  "performed a cursory review of the videos and reports of the 5 prior

arrests and 5 post arrests surrounding Mr. Allemang's arrest by Trooper Rogers."[34] Dr.

Thompson opines that"[s]ome of the persons who were arrested  were likely legally

impaired based on obvious indicators. . . ." and "some were arrested who were not legally

impaired, just as was the case of Mr. Allemang."[35] Dr. Thompson further opines that based

on his "cursory review," Trooper Rogers improperly conducted SFSTs.[36] Dr. Thompson

---

[32] Plaintiff's exhibit C, Declaration of Steve Thompson, ¶ 15.
[33] Plaintiff's exhibit C, Plaintiff's exhibit F, Arrest Report.
[34] Plaintiff's exhibit I.
[35] Id.
[36] Id.

"suspects" that Troop D was "unable or unwilling to adequately train and supervise Troopers who were actively making DWI arrests."[37] Dr. Thompson also opines that the Internal Affairs investigation was "woefully inadequate. . . ." and "the "investigation report and recording show there was no real investigation."[38]

Defendants argue that Mr. Allemang has failed to identify and prove any specific training-related deficiencies to support his allegation that Trooper Rogers was not qualified to administer the SFST.

Defendants also argue that Mr. Allemang's claims of negligent training under Louisiana Revised Statute 9:2798.1 provides immunity from suit based upon the exercise of a policymaking or discretionary act within the course and scope of its exercise of lawful powers, unless the act is not reasonably related to a legitimate governmental objective, is criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or is flagrant misconduct. As an agency and arm of the state, DPSC can raise a discretionary immunity defense. LSA-R.S. 36:401 & 40:1301, *et seq.; Roberts v. City of Shreveport,* 397 F.3d 287 (5th Cir. 2005); *Richardson v. Southern University,* 118 F.3d 450, 452-453 (5th Cir. 1997); *Fridge v. City of Marksville,* 2019 WL 1923445 (W.D. La. 4/19/19), report and recommendation adopted, 2019 WL 1923340 (W.D. La. 4/26/19) (holding the Chief of Police and City of Marksville were entitled to discretionary immunity as to plaintiff's § 1983 failure to train and state law claim of negligent training).

---

[37] Id.
[38] Id.

Defendants rely on Trooper Rogers' deposition testimony wherein he testified that he received training on the administration of SFSTs as well as refresher SFST courses.[39] Trooper Rogers began his employment with DPSC in 1994 and has been trained in DWI detection and apprehension, SFST, breath analysis, chemical testing for intoxication and/or intoxilyzer operation, and he has completed an enhanced DWI investigation course.[40] During his employment, Trooper Rogers has never been accused of, counseled about and/or investigated by Internal Affairs for: (1) skipping, missing or otherwise failing to complete a requisite SFST step while administering the SFST to a suspect, and/or (2) improperly documenting his observations and conclusions related to SFSTs he has administered to suspects outside of this lawsuit.[41]

What is fatally absent in the record is evidence that Trooper Rogers was inadequately trained to administer an SFST, and/or supervised. Dr. Thompson fails to specify how Trooper Rogers' training was inadequate. Trooper Rogers testified that he receive training on the administration of SFSTs sand he periodically attends refresher courses related to SFSTs; the last one he attended was in 2011.[42] The Court finds that Mr. Allemang has failed to submit summary judgment evidence to create a factual issue for trial as to Plaintiff's federal negligent training claim. In addition, the DPSC is entitled to discretionary immunity for the state law negligent training claim as well as negligent supervision.

---

[39] Doc. 35-3, Rogers' Deposition, pp. 16,17,19,112,113,114.
[40] Plaintiff's exhibit H; Docs. 70-9 and 70-10.
[41] Exhibit 4, attached to Affidavit of Freddie Shawn Rogers, Doc. 74-3.
[42] Doc. 35-3, Rogers' Deposition, pp. 16, 17, 19, 112, 113, 114.

*Vicarious liability for torts*

Mr. Allemang alleges that the DPSC is vicariously liable for Trooper Rogers' actions. The CPSC can only be found vicariously liable if the Court finds there is an underlying state law tort committed by Trooper Rogers. Because the Court finds none, this claim will likewise be dismissed.

<u>**CONCLUSION**</u>

For the reasons set forth herein, the Court will grant Defendants' Motion for Summary Judgment in its entirety, dismissing with prejudice all or Mr. Allemang's remaining claims.

**THUS DONE AND SIGNED** in Chambers on this 10th day of June, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**